IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| PEDRO GONZALEZ JR., as administrator for the Estate of Pedro Gonzalez III,<br><br>Plaintiff,<br><br>v.<br><br>OFFICERS OLSON (Star No. 1145), MOTYKA (Star No. 4427), TUNZI (Star No. 9326), MORALES (Star No. 14163), MALENOCK (Star No. 7343), DETECTIVES McCORMACK (Star No. 20573), and NORADIN (Star No. 21252), LT. SHOUSE (Star No. 530), and the CITY OF CHICAGO,<br><br>Defendants. | ) | Case No. 1:11 cv 08356<br><br>Honorable Judge Lindberg<br>Magistrate Judge Gilbert<br><br>JURY TRIAL DEMANDED |

**<u>SECOND AMENDED COMPLAINT</u>**

NOW COMES Plaintiff, PEDRO GONZALEZ JR., as the Administrator for the Estate of Pedro Gonzalez III, deceased, through counsel, LOEVY & LOEVY, and complains of Defendants OFFICER OLSON (Star No. 1145), OFFICER MOTYKA (Star No. 4427), OFFICER TUNZI (Star No. 9326), OFFICER MORALES (Star No. 14163), OFFICER MALENOCK (Star No. 7343), DETECTIVE McCORMACK (Star No. 20573), and DETECTIVE NORADIN (Star No. 21252), LT. SHOUSE (Star No. 530), OTHER AS-YET UNIDENTIFIED CHICAGO POLICE OFFICERS, and the CITY OF CHICAGO, and alleges as follows:

## Introduction

1. Plaintiff Pedro Gonzalez III was fatally shot in the back multiple times by Chicago Police Officers MOTYKA (Star Number 4427), and OLSON (Star Number 1145) without lawful justification. At the time of the fatal shooting, Mr. Gonzalez was unarmed, and presented no threat to the Officers, or anyone else.

## Jurisdiction and Venue

2. This action is brought pursuant to 42 U.S.C. Section 1983 to redress the deprivation under color of law of Plaintiff's rights as secured by the United States Constitution.

3. This Court has jurisdiction over Plaintiff's federal claims pursuant to 28 U.S.C. § 1331 and over the state law claims pursuant to 28 U.S.C. § 1367. Venue is proper because Defendant Officers are believed to reside in this jurisdiction and the City of Chicago is a municipal corporation within this district. Moreover, all of the events giving rise to the claims asserted occurred within this district.

## Plaintiff's Death

4. On or about June 15, 2011, Mr. Gonzalez was standing outside his home, talking to his father on his cell phone.

5. Despite the lack of any reasonable basis to believe that Mr. Gonzalez was doing anything illegal or improper, one or more of the Defendant Officers, in uniform, approached him after exiting an unmarked squad car.

6. As the Defendant Officers approached, Mr. Gonzalez ran away from them. Thereafter, at least one Defendant Officer gave chase on foot, and at least one Defendant Officer followed in an unmarked squad car.

7. As Mr. Gonzalez turned the corner onto Kolin Avenue, Defendant Officers Motyka and Olson opened fire from their positions on the sidewalk and in the street. Mr. Gonzalez was struck in the back, and fell to the ground. Even after Mr. Gonzalez lay injured on the ground, the Defendant Officers continued to shoot. All in all, multiple shots were fired by the Defendant Officers; no shots were ever fired by Mr. Gonzalez.

8. Mr. Gonzalez, injured and laying on the ground, was then forcefully handcuffed, with his hands restrained behind his back.

9. Mr. Gonzalez remained alive and experienced conscious pain and suffering from the time he was shot by Defendant Officers, at approximately 4:50 p.m., until a time after he arrived at the hospital, when he was pronounced dead at approximately 5:20 p.m.

10. This fatal police shooting was totally unjustified. Mr. Gonzalez never did anything which could have justified the use of deadly force.

11. The Defendant Officers who shot Mr. Gonzalez in the back, as well as the ones who failed to intervene, were acting under color of law and within the scope of their employment at the time of the shooting.

**Aftermath**

12. After the shooting, neighbors gathered on the street, angered over the unjustified police shooting of an innocent person. In response to the neighbors' questioning, Defendant Officers held up a gun in the air, and claimed that it was found on the body of the victim.

13. Defendant Officers then pressured witnesses who had gathered on the street to falsely claim that Mr. Gonzalez was carrying that weapon at the time of the shooting.

14. Within one day, police investigators for the City relayed to the media that a purported investigation had been conducted, and it was determined that Mr. Gonzalez pointed a

handgun at the police before the officers shot him, thus justifying the shooting within hours of its occurrence. This justification was patently false.

**The City's Policies and Practice**

15. *Per capita,* police officers in the City of Chicago shoot and kill far more of its residents than officers in comparable cities.

16. In 2010, for example, Chicago Police Officers shot 46 people and killed 13 of them. New York City Police Officers, by contrast, killed only 8 that year, despite the fact that the population of New York City is about three times larger than that of the City of Chicago. In a Wall Street Journal interview with Raymond Kelly dated January 12, 2011, the NYPD Police Commissioner, Mr. Kelly credited the improvement in training procedures, and a more thorough shooting-review process for the drop in police shootings. "Tactics," he said, "can put you in a situation where you don't have to shoot."

17. The numbers involved with the Chicago police shootings remain unjustifiably high. As the Chicago Tribune outlined in an article dated July 23, 2011: Chicago Police Officers shot 44 people in 2006, killing 17; 39 people in 2007, killing 8; 55 people in 2008, killing 22; 61 people in 2009, killing 19; and 46 people in 2010, killing 13. As of July, 2011 Chicago Police officers shot 40 people total (nearly as many as in all of 2010) and killed 16 of those people, including the Plaintiff Pedro Gonzalez.

18. The reason why Chicago Police Officers shoot so many more people than other big City police departments faced with comparable crime rates is because the City of Chicago fails to adequately train, supervise, and discipline its officers in this regard.

19. Consistent with this broken system, when Chicago Police Officers shoot people, the Independent Police Review Authority ("IPRA") invariably exonerates the police officer regardless of the actual facts and circumstances of the shooting.

20. The justification set out by IPRA for the shooting always adheres closely to one of the three formulas: the deceased either (a) pointed a gun at an officer; (b) tried to take an officer's gun; or (c) endangered someone's life.

21. Sometimes one of these three things does indeed occur. However, in a disturbing number of cases, the shootings are in fact unjustified, and are improperly excused after the fact by false contentions, witness manipulation, and/or planted guns.

22. Mr. Gonzalez's shooting was one of the latter. He was killed because certain officers believed that if they used deadly force against a fleeing youth, not only would no one of any authority ever question their poor judgment in any meaningful way, but their own colleagues would swing into motion to create evidence to support the shooting. Sadly, they were correct.

**Count I – 42 U.S.C. Sec. 1983**
**Excessive Force Against Officers Motyka and Olson**

23. Each of the Paragraphs of this Complaint is incorporated as if restated fully herein.

24. As described in the preceding paragraphs, Chicago Police Officers Motyka and Olson subjected Decedent to unreasonable and excessive force.

25. The misconduct described in this Count was objectively unreasonable and was undertaken intentionally with willful indifference to Decedent's constitutional rights.

26. The misconduct described in this Count was undertaken with malice, willfulness, and reckless indifference to the rights of others.

27. The misconduct described in this Count was undertaken pursuant to the policy and practice of the Chicago Police Department in that as a matter of both policy and practice, the Chicago Police Department directly encourages, and is thereby the moving force behind, the very type of misconduct at issue here by failing to adequately train, supervise and control its officers, such that its failure to do so manifests deliberate indifference.

28. As a matter of both policy and practice, the Chicago Police Department facilitates the very type of misconduct at issue here by failing to adequately punish and discipline prior instances of similar misconduct, thereby leading Chicago Police Officers to believe their actions will never be scrutinized and, in that way, directly encouraging future abuses such as those affecting Decedent; specifically, Chicago Police Officers accused of excessive force can be confident that the IPRA will not investigate those accusations in earnest, and will refuse to recommend discipline even where the Officer has engaged in excessive force.

29. Generally, as a matter of widespread practices prevalent as to comprise municipal policy, officers of the Chicago Police Department abuse citizens in a manner similar to that alleged by Decedent in this Count on a frequent basis, yet the Chicago Police Department makes findings of wrongdoing in a disproportionately small number of cases.

30. Municipal policy-makers are aware of, and condone and facilitate by their inaction, a "code of silence" in the Chicago Police Department, by which officers fail to report misconduct committed by other officers, such as the misconduct at issue in this case.

31. The City of Chicago has failed to act to remedy the patterns of abuse describe in the preceding sub-paragraphs, despite actual knowledge of the same, thereby causing the types of injuries alleged here.

32. As a matter of express policy, the City of Chicago does not retain any records which are more than seven years old documenting allegations of excessive force against police officers, thereby preventing the City from ascertaining any patterns of abuse which might develop over the course of a police officer's career. Further, the City fails to utilize even the records that are retained to identify and respond to patterns of misconduct by its officers.

33. As a matter of express policy, the City of Chicago refuses to take into consideration patterns of allegations of civil rights violations when evaluating the merits of any particular complaint. In other words, if a police officer is accused of the same sort of misconduct twenty times in row, IPRA will not consider those allegations if they are deemed unsustained.

34. As a result of the unjustified and excessive use of force, as well as the City of Chicago's policy and practice, Decedent experienced conscious pain and suffering, his Estate has incurred medical and funeral expenses, and Decedent has suffered injury and emotional distress, including loss of society and companionship.

**Count II - 42 U.S.C. §1983**
**Failure to Intervene Against All Defendants**

35. Each of the Paragraphs of this Complaint is incorporated as if restated fully herein.

36. In the manner described above, during the constitutional violations described above, one or more Chicago Police Officers stood by without intervening to prevent the misconduct.

37. As a result of this failure to intervene to prevent the violation of Decedent's constitutional rights, Decedent suffered pain and injury, as well as emotional distress. These Officers had a reasonable opportunity to prevent this harm, but failed to do so.

38. The misconduct described in this Count was objectively unreasonable and was undertaken intentionally, with willful indifference to Decedent's constitutional rights.

39. The misconduct described in this Count was undertaken pursuant to Chicago's policy and practice in the manner described in preceding paragraphs.

**Count III – State Law Claim**
**Wrongful Death – Intentional Battery**
**Against Officers Motyka and Olson**

40. Each of the Paragraphs of this Complaint is incorporated as if restated fully herein.

41. As described more fully in the preceding paragraphs the actions of Chicago Police Officers Motyka and Olson at issue constituted offensive physical contact made without the consent of the Decedent.

42. These actions were undertaken intentionally, willfully and wantonly, and were the proximate cause of Decedent's great bodily harm and death, as well as Decedent's great pain and suffering.

43. The misconduct described in this Count was undertaken with intentional disregard of the Decedent's rights.

44. As a result, the Estate has incurred medical and funeral expenses, and suffered injury, including loss of society and companionship.

**Count IV – State Law Claim**
**Wrongful Death – Reckless Battery**
**Against Officers Motyka and Olson**

45. Each of the Paragraphs of this Complaint is incorporated as if restated fully herein.

46. As described more fully in the preceding paragraphs the actions of Chicago Police Officers Motyka and Olson constituted offensive physical contact made without the consent of the Decedent.

47. These actions were undertaken willfully, wantonly, and with reckless indifference or conscious disregard for the safety of others.

48. These actions proximately caused Decedent great bodily harm and death, as well as great pain and suffering to Decedent.

49. As a result of these actions, the Estate has incurred medical and funeral expenses, and suffered injury, including loss of society and companionship.

**Count V - State Law Claim**
**Survival Action - Intentional Battery**
**Against Officers Motyka and Olson**

50. Each of the Paragraphs of this Complaint is incorporated as if restated fully herein.

51. As described more fully in the preceding paragraphs, the actions of Chicago Police Officers Motyka and Olson constituted offensive physical contact made without the consent of the Decedent.

52. These actions were undertaken intentionally, willfully and wantonly.

53. These actions proximately caused Decedent great bodily harm, pain and suffering, and then death.

54. The misconduct described in this Count was undertaken with intentional disregard of the Decedent's rights.

55. As a result of these actions, Decedent experienced conscious pain and suffering.

**Count VI - State Law Claim**
**Survival Action - Reckless Battery**
**Against All Defendants**

56. Each of the Paragraphs of this Complaint is incorporated as if restated fully herein.

57. As described more fully in the preceding paragraphs, in restraining Decedent, the actions of the Chicago Police Officers constituted offensive physical contact made without the consent of the Decedent.

58. These actions were undertaken willfully, wantonly, and with reckless indifference or conscious disregard for the safety of others.

59. These actions proximately caused Decedent great bodily harm, pain and suffering, and then death.

60. The misconduct described in this Count was undertaken reckless disregard of the Decedent's rights.

61. As a result of these actions, Decedent experienced conscious pain and suffering.

**Count VII – State Law Claim**
**Respondeat Superior**

62. Each of the Paragraphs of this Complaint is incorporated as if restated fully herein.

63. In committing the acts alleged in the preceding paragraphs, the above-described Chicago Police Officers were each members of, and agents of, the Chicago Police Department acting at all relevant times within the scope of his or her employment.

64. Defendant City of Chicago is liable as principal for all torts committed by its agent.

**Count VIII – State Law Claim**
**Indemnification**

65. Each of the Paragraphs of this Complaint is incorporated as if restated fully herein.

66. Illinois law provides that public entities are directed to pay any tort judgment for compensatory damages for which employees are liable within the scope of their employment activities.

67. The Chicago Police Officers who shot and killed Mr. Gonzalez, as well as the ones who failed to intervene, are or were employees of the Chicago Police Department, who acted within the scope of their employment in committing the misconduct described herein.

WHEREFORE, Plaintiff, PEDRO GONZALEZ III, by and through the Administrator for his Estate, respectfully requests that the Court enter judgment in his favor and against the Defendants OFFICER OLSON (Star No. 1145), OFFICER MOTYKA (Star No. 4427), OFFICER TUNZI (Star No. 9326), OFFICER MORALES (Star No. 14163), OFFICER MALENOCK (Star No. 7343), DETECTIVE McCORMACK (Star No. 20573), and DETECTIVE NORADIN (Star No. 21252), LT. SHOUSE (Star No. 530), and the CITY OF CHICAGO, awarding compensatory damages, including medical and funeral expenses, and attorneys' fees, as well as any other relief this Court deems just and appropriate under the circumstances.

**JURY DEMAND**

Plaintiff hereby demands a trial by jury pursuant to Federal Rule of Civil Procedure 38(b) on all issues so triable.

Respectfully Submitted,

Attorney for Plaintiff

Arthur Loevy
Jon Loevy
Russell Ainsworth
Julie Thompson
LOEVY & LOEVY
312 North May, Suite 100
Chicago, IL 60607
Tel: (312) 243-5900
Fax: (312) 243-5902